UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION


CASE NO.

ROBERT LIVINGSTONE, individually
and on behalf of all others
similarly situated

       Plaintiff,

vs.

I MERCHANT DIRECT, INC. d/b/a
iMerchantDirect.com

       Defendant,

_____/

## CLASS ACTION COMPLAINT

Plaintiff, ROBERT LIVINGSTONE (hereinafter "Plaintiff"), brings this class action under

Rule 23 of the Federal Rules of Civil Procedure against I MERCHANT DIRECT, INC. d/b/a

iMerchantDirect.com ("iMerchant" or "Defendant") for its violations of the Telephone Consumer

Protection Act, 47 U.S.C. § 227 (hereinafter "the TCPA"), and the regulations promulgated

thereunder.  In support, Plaintiff alleges as follows:

## PRELIMINARY STATEMENT

1.    Plaintiff brings this Class Action Complaint for damages, injunctive relief, and any

other available legal or equitable remedies, resulting from the illegal actions of Defendant in

negligently or willfully contacting Plaintiff on Plaintiff's cellular telephone, in violation of the

Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., ("TCPA"), thereby invading

Plaintiff's privacy.  Plaintiff alleges as follows upon personal knowledge as to himself and his own

acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

2.      The TCPA was designed to prevent calls like the ones described within this complaint, and to protect the privacy of citizens like Plaintiff. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

3.      Additionally, the FCC has explicitly stated that the TCPA's prohibition on automatic telephone dialing systems "encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls." U.S.C.A. Const. Amend. 5; Telephone Consumer Protection Act of 1991, § 3(a), 47 U.S.C.A. § 227(b)(1)(A)(iii). *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165 (N.D. Cal. 2010)

4.      In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer.   TCPA, Pub.L. No. 102–243, § 11. Toward this end, Congress found that:

> [b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id.* at § 12; *see also Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at* 4 (N.D. Ill. Aug. 10, 2012) (citing Congressional findings on TCPA's purpose).

5.      Congress also specifically found that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call…." *Id.* at §§ 12-13. See also, Mims, 132 S. Ct. at 744.   5. As Judge Easterbrook of the Seventh Circuit recently explained in a TCPA case regarding calls to a non-debtor similar to this one:

> The Telephone Consumer Protection Act … is well known for its provisions limiting junk-fax transmissions. A less-litigated part of the Act curtails the use of automated dialers and prerecorded messages to cell phones, whose subscribers often are billed by the minute as soon as the call is answered—and routing a call to voicemail counts as answering the call. An automated call to a landline phone can be an annoyance; an automated call to a cell phone adds expense to annoyance.

6.      The Ninth Circuit recently affirmed certification of a TCPA class action remarkably similar to this in *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036 (9th Cir. 2012)

## JURISDICTION AND VENUE

7.      This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227.

8.      Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims in this case occurred in this District, including the transmission of the subject unauthorized text advertisements.

9.      The Court has personal jurisdiction over Defendant because it conducts business in this state, markets its services within this state, and has availed itself to the jurisdiction of the State of Florida by transmitting the subject unauthorized text advertisements to Plaintiff and Class Members in this state.

## PARTIES

10.     Plaintiff's domicile is in Broward County, Florida.  Plaintiff is a citizen of the state of Florida.

11.     Class Members are citizens of the state of Florida and throughout the United States.

12.     Defendant, iMerchant, is an Arizona company and is citizen of Arizona. iMerchant lists is principal address and registered agent as Ralph A. Herro, 1825 E. Northern Avenue, #115, Phoenix, AZ 85020. Upon information and belief, iMerchant also does substantial business in Florida, including a principal place of business on Florida, at 5448 Hoffner Avenue, Orlando, Florida 32812. Accordingly, iMerchant may also be considered to be citizen of Florida.

13.     Defendant operates a website named www.iMerchantDirect.com.  iMerchant is a registered ISO of Wells Fargo Bank, N.A. iMerchant is Merchant Services Provider that provides a merchant credit card processing services. Since is founding in 2005, iMerchant has grown at a staggering rate by, in part, soliciting independent sales representatives to sell and promote iMerchant's credit card processing services.

14.     Defendant has a business model whereby it promotes its business and solicits sales representatives by sending unsolicited text messages offering the promise to "make what you're worth."  Defendant's website touts its ability to "text message your clients anytime anywhere."

15.     Defendant, directly or through other persons, entities or agents acting on its behalf, conspired to, agreed to, contributed to, authorized, assisted with, and/or otherwise caused all of the wrongful acts and omissions, including the dissemination of the unsolicited text messages that are the subject matter of this Complaint.

## FACTUAL ALLEGATIONS

16.     At all times relevant, Plaintiff was a citizen of the State of Florida.  Plaintiff is, and

at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

17.     Defendant is, and at all times mentioned herein was, a corporation and "persons,"

as defined by 47 U.S.C. § 153 (39).

18.     At all times relevant Defendant conducted business in the State of Florida and in

Broward County, within this judicial district.

19.     Defendant utilizes bulk SPAM text messaging, or SMS marketing, to send

unsolicited text messages, marketing and advertising Defendant's merchant services, including at

least 7 unsolicited text messages to Plaintiff.

20.     For example, on or about **May 29, 2018**, at approximately 01:47 p.m. (EST),

Defendant sent an unsolicited text message to Plaintiff's cellular telephone ending in "8349." This

text message, read:

> "This is  with IMerchant Direct. The reason I'm reaching out to you is
> because your resume shows you have all the qualifications for this position.
> Time is of the essence as this position well be filled shortly. Please email
> me tboyd@imerchantdirect.com with what time works best for you to talk,
> full name and best contact #. Or call me at +18772410186"

21.     Defendant used an SMS number ending in "1484" to send this unsolicited text

message to Plaintiff's cellular telephone.

22.     On or about **May 31, 2018**, at approximately 01:12 p.m. (EST), Defendant sent an

unsolicited text message to Plaintiff's cellular telephone ending in "8349." This text message, read:

> "What are you waiting for?!! Make what you're worth with an A+ company
> IMerchant Direct.
> - A+ BBB rating
> - $34 on INC. 5000
> - Fasting growing ISO 2017"

23.     Defendant used an SMS number ending in "1484" to send this unsolicited text message to Plaintiff's cellular telephone.

24.     On or about **June 2, 2018**, at approximately 01:38 p.m. (EST), Defendant sent an unsolicited text message to Plaintiff's cellular telephone ending in "8349." This text message, read:

> "What are you waiting for?!! Make what you're worth with an A+ company
> IMerchant Direct.
> * A+ BBB rating
> * $34 on INC. 5000
> * Fasting growing ISO 2017"

25.     Defendant used an SMS number ending in "1484" to send this unsolicited text message to Plaintiff's cellular telephone.

26.     On or about **June 4, 2018**, at approximately 02:07 p.m. (EST), Defendant sent an unsolicited text message to Plaintiff's cellular telephone ending in "8349." This text message, read:

> "This is   with IMerchant Direct. The reason I'm reaching out to you is
> because your resume shows you have all the qualifications for this position.
> Time is of the essence as this position well be filled shortly. Please email
> me tboyd@imerchantdirect.com with what time works best for you to talk,
> full name and best contact #. Or call me at +18772410186"

27.     Defendant used an SMS number ending in "1484" to send this unsolicited text message to Plaintiff's cellular telephone.

28.     On or about **June 6, 2018**, at approximately 01:40 p.m. (EST), Defendant sent an unsolicited text message to Plaintiff's cellular telephone ending in "8349."  This text message, read:

> "What are you waiting for?!! Make what you're worth with an A+ company
> IMerchant Direct.
> * A+ BBB rating
> * $34 on INC. 5000
> * Fasting growing ISO 2017"

29.     Defendant used an SMS number ending in "1484" to send this unsolicited text message to Plaintiff's cellular telephone.

30.     On or about **June 8, 2018**, at approximately 02:10 p.m. (EST), Defendant sent an unsolicited text message to Plaintiff's cellular telephone ending in "8349." This text message, read:

> "This is   with IMerchant Direct. The reason I'm reaching out to you is because your resume shows you have all the qualifications for this position. Time is of the essence as this position well be filled shortly. Please email me tboyd@imerchantdirect.com with what time works best for you to talk, full name and best contact #. Or call me at +18772410186"

31.     Defendant used an SMS number ending in "1484" to send this unsolicited text message to Plaintiff's cellular telephone.

32.     On or about **June 10, 2018**, at approximately 01:40 p.m. (EST), Defendant sent an unsolicited text message to Plaintiff's cellular telephone ending in "8349." This text message, read:

> "What are you waiting for?!! Make what you're worth with an A+ company IMerchant Direct.
> - A+ BBB rating
> - $34 on INC. 5000
> - Fasting growing ISO 2017"

33.     Defendant used an SMS number ending in "1484" to send this unsolicited text message to Plaintiff's cellular telephone.

34.     Screen shots of the unsolicited text messages sent to Plaintiff are depicted below for demonstrative purposes:









35.    Plaintiff was at no time given an option to "opt-out" of receiving future unsolicited text messages from Defendant.

36.     At no time did Plaintiff provide Plaintiff's cellular phone number to Defendant through any medium, nor did Plaintiff consent to receive such an unsolicited text message.

37.     Plaintiff has never signed-up for, and has never used, Defendant's services or products, and has never had any form of business relationship with Defendant.

38.     Moreover, Plaintiff's cell phone has been registered on the do not call registry since October 15, 2007.

39.     Through the unsolicited SPAM text message, Defendant contacted Plaintiff several times on Plaintiff's cellular telephone regarding an unsolicited service via an "automatic telephone dialing system," ("ATDS") as defined by 47 U.S.C. § 227(a)(1) and prohibited by 47 U.S.C. § 227(b)(1)(A).

40.     Upon information and belief, this ATDS has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

41.     Upon information and belief, this ATDS has the capacity to store numbers on a list and to dial numbers from a list without human intervention.

42.     The telephone number Defendant called was assigned to a cellular telephone service for which Plaintiff incurs a charge for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

43.     This text message constituted a call that was not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

44.     Plaintiff did not provide Defendant or its agents prior express consent to receive text messages, including unsolicited text messages, to his cellular telephone, pursuant to 47 U.S.C.

45.     The unsolicited text message by Defendant, or their agents, violated 47 U.S.C. § 227(b)(1).

46.     Defendant is and was aware that it is placing unsolicited robocalls to Plaintiff and other consumers without their prior express consent.

47.     Plaintiff was damaged by Defendant's text messages. In addition to using Plaintiff's cellular data, his privacy was wrongfully invaded, and Plaintiff has become understandably aggravated with having to deal with the frustration of repeated, unwanted robo-text messages forcing him to divert attention away from his work and other activities.

## CLASS ACTION ALLEGATIONS

48.     Plaintiff brings this class action under rules 23(a) and 23(b)(2) & (b)(3) of the Federal Rules of Civil Procedure on behalf of itself and of a similarly situated "Class" or "Class Members" defined as:

> All subscribers within the United States (i) who were sent a text message within the four years prior to the filing of the Complaint, (ii) from Defendant and/or its agents, (iii) promoting the availability of employment with Defendant.
>
> Excluded from the Class are: any Defendant, and any subsidiary or affiliate of that Defendant, and the directors, officers and employees of that Defendant or its subsidiaries or affiliates, and members of the federal judiciary.

49.     This action has been brought and may properly be maintained as a class action against Defendants pursuant to Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable. Plaintiff reserves the right to amend the Class definition if discovery and further investigation reveal that any Class should be expanded or otherwise modified.

50.     **Numerosity**: At this time, Plaintiff does not know the exact number of Class Members, but among other things, given the nature of the claims and that Defendants' conduct consisted of a standardized SPAM text messaging campaign electronically sent to particular telephone numbers, Plaintiff believes, at a minimum, there are greater than forty (40) Class

Members. Plaintiff believes that the Class is so numerous that joinder of all members of the Class is impracticable and the disposition of their claims in a class action rather than incremental individual actions will benefit the Parties and the Court by eliminating the possibility of inconsistent or varying adjudications of individual actions.

51.     Upon information and belief, a more precise Class size and the identities of the individual members thereof are ascertainable through Defendant's records, including, but not limited to Defendant's text and marketing records.

52.     Members of the Class may additionally or alternatively be notified of the pendency of this action by techniques and forms commonly used in class actions, such as by published notice, e-mail notice, website notice, fax notice, first class mail, or combinations thereof, or by other methods suitable to this class and deemed necessary and/or appropriate by the Court.

53.     **Existence and Predominance of Common Questions of Fact and Law**: There is a well-defined community of common questions of fact and law affecting the Plaintiff and members of the Class. Common questions of law and/or fact exist as to all members of the Class and predominate over the questions affecting individual Class members. These common legal and/or factual questions include, but are not limited to, the following:

   a.  Whether, within the four years prior to the filing of this Complaint, Defendant or its agents sent any unsolicited text message/s (other than a message made for emergency purposes or made with the prior express consent of the called party) to a Class member using any automatic dialing and/or SMS texting system to any telephone number assigned to a cellular phone service;

   b.  How the Defendant obtained the numbers of Plaintiff and Class members;

     c.   Whether the dialing system used to send the subject text messages is an Automatic Telephone Dialing System;

     d.   Whether Defendant engaged in telemarketing when it sent the text messages which are the subject of this lawsuit;

     e.   Whether the text messages sent to Plaintiff and Class Members violate the TCPA and its regulations;

     f.   Whether Defendant willfully or knowingly violated the TCPA or the rules prescribed under it;

     g.   Whether Plaintiff and the members of the Class are entitled to statutory damages, treble damages, and attorney fees and costs for Defendant's acts and conduct;

     h.   Whether Plaintiff and members of the Class are entitled to a permanent injunction enjoining Defendant from continuing to engage in its unlawful conduct; and

     i.   Whether Plaintiff and the Class are entitled to any other relief.

54.     One or more questions or issues of law and/or fact regarding Defendant's liability are common to all Class Members and predominate over any individual issues that may exist and may serve as a basis for class certification under Rule 23(c)(4).

55.     **Typicality**: Plaintiff's claims are typical of the claims of the members of the Class. The claims of the Plaintiff and members of the Class are based on the same legal theories and arise from the same course of conduct that violates the TCPA.

56.     Plaintiff and members of the Class each received at least one SPAM text advertisement, advertising the casino and betting services, which contained no purported opt-out notice, which Defendant sent or caused to be sent to Plaintiff and the members of the Class.

57.     **Adequacy of Representation:** Plaintiff is an adequate representative of the Class because Plaintiff's interests do not conflict with the interests of the members of the Class. Plaintiff will fairly, adequately and vigorously represent and protect the interests of the members of the Class and has no interests antagonistic to the members of the Class. Plaintiff has retained counsel, who are competent and experienced in litigation in the federal courts, TCPA litigation and class action litigation.

58.     **Superiority**: A class action is superior to other available means for the fair and efficient adjudication of the claims of the Class. While the aggregate damages which may be awarded to the members of the Class are likely to be substantial, the damages suffered by individual members of the Class are relatively small. As a result, the expense and burden of individual litigation makes it economically infeasible and procedurally impracticable for each member of the Class to individually seek redress for the wrongs done to them. Plaintiff does not know of any other litigation concerning this controversy already commenced against Defendant by any member of the Class. The likelihood of the individual members of the Class prosecuting separate claims is remote. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would increase the delay and expense to all parties and the court system resulting from multiple trials of the same factual issues. In contrast, the conduct of this matter as a class action presents fewer management difficulties, conserves the resources of the parties and the court system, and would protect the rights of each member of the Class. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

59.     **Class-Wide Injunctive Relief and Rule 23(b)(2):** Moreover, as an alternative to or in addition to certification of the Class under Rule 23(b)(3), class certification is warranted

under Rule 23(b)(2) because Defendant has acted on grounds generally applicable to Plaintiff and members of Class, thereby making appropriate final injunctive relief with respect to Plaintiff and Class Members as a whole.  Plaintiff seeks injunctive relief on behalf of Class Members on grounds generally applicable to the entire Class in order to enjoin and prevent Defendants' ongoing violations of the TCPA, and to order Defendant to provide notice to them of their rights under the TCPA to statutory damages and to be free from unwanted faxes

**COUNT I**
**NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT**
**47 U.S.C. § 227(b)**

60.     Plaintiff incorporates by reference all of the allegations contained in paragraphs 1 through 58 of this Complaint as though fully stated herein.

61.     The foregoing acts and omissions of Defendant constitutes numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 et seq.

62.     As a result of Defendant's negligent violations of 47 U.S.C. § 227 et seq., Plaintiff and the Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

63.     Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members relief against Defendant, as set forth in the Prayer for Relief below.

**COUNT II**
**KNOWING AND/OR WILLFUL VIOLATIONS OF THE**
**TELEPHONE CONSUMER PROTECTION ACT**
**47 U.S.C. § 227(b)**

64.     Plaintiff incorporates by reference all of the allegations contained in paragraphs 1 through 58 of this Complaint as though fully stated herein.

65.     The foregoing acts and omissions of Defendant constitutes numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227(b).

66.     As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227(b), Plaintiff and The Class are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

67.     Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members relief against Defendant, as set forth in the Prayer for Relief below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and in favor of the class, against Defendants for:

a.  An order certifying this case as a class action, certifying Plaintiff as representative of the Class, and designating Plaintiff's attorneys Class counsel;

b.  Statutory damages of $500 per text;

c.  Willful damages at $1,500 per text;

d.  A declaration that Defendants' practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A)(iii);

e.  An injunction prohibiting Defendants from using an automatic telephone dialing system to text numbers assigned to cellular telephones without the prior express

written consent of the called party;

f.   Reasonable attorney's fees and costs; and

g.   Such further and other relief as this Court deems reasonable and just.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff is entitled to, and demands, a trial by jury.

Dated: July 24, 2018                         Respectfully submitted,

*s/ Seth M. Lehrman*
Seth M. Lehrman, Esq. (Fla. Bar No. 132896)
E-mail: Seth@epllc.com
**EDWARDS POTTINGER, LLC**
425 North Andrews Avenue, Suite 2
Fort Lauderdale, FL 33301
Tel: (954) 524-2820
Facsimile: (954) 524-2822

Joshua H. Eggnatz, Esq. (Fla. Bar No.: 0067926)
E-mail: JEggnatz@JusticeEarned.com
Michael J. Pascucci, Esq. (Fla. Bar No.: 0083397)
E-mail: MPascucci@JusticeEarned.com
**EGGNATZ | PASCUCCI**
5400 S. University Drive, Ste. 417
Davie, FL 33328
Tel: (954) 889-3359
Facsimile: (954) 889-5913

*Attorneys for Plaintiff*